The next case is Feldman v. Fleischman. May it please the Court, good morning, Your Honors. My name is Rob Glunt, and I am the attorney for the appellant, Daniel Feldman. The first issue before the Court today in this appeal is whether the district court erred in failing to instruct the jury that damages were an element of breach of fiduciary duty under New York law. So let's start with what's not actually in dispute. It is not actually in dispute that damages are an element of breach of fiduciary duty under New York law. Sotomayor, when you say damages, do you mean harm, injury, damage, or do you mean compensable damages? It is harm, injury, and damage. Those damages may not be ascertainable. They may not be liquidated. But the jury must be instructed that they have to find that the defendant was harmed and that that harm was result of the breach of fiduciary duty by the person who was accused of it. Don't we have that here? No, we do not, Your Honor. The jury was not instructed that damage was an element of the claim. They were not instructed that they were required to find that there was harm or damage to the employers of Mr. Feldman. And because of that, there was no conclusion by the jury that there was, in fact, damage. So there's no dispute that damage is an element of the claim. There's no dispute the jury was not instructed as to damages. There's no dispute that they weren't even given a line with which to write damages or to check an affirmation that they had found that there was damage, even if it could not be liquidated. So the question here is, well, what does that mean? So the argument that we get from the appellee is that essentially no harm, no foul. It doesn't matter. And they say that for a couple of reasons. They first say that it's no harm, no foul because they were seeking disgorgement under the Faithless Servant Doctrine. That's something we'll talk about a little bit more when they raise it, but as a practical matter, it doesn't really matter. The jury did not find that the Faithless Servant Doctrine should be applied. So even if that were a potential means of achieving damages, it's not one that would apply in this particular case. And we also cite two authorities in our papers that show that disgorgement as a general matter is an equitable remedy. It is not generally held to be a substitute for damages. So it's your position, relying on cases like IDT, that you need these actual damages and you can't use the Faithless Servant Doctrine and the concept of disgorgement to substitute for that? That is our contention, Your Honor. And that is, in essence, what the district court did. No. I think what the district court was very opaque in its reasoning. You know, full disclosure, absolutely opaque. What I think the district court did by implication, when you look at everything the district court did, I believe its reasoning was probably that nominal damages would suffice. I think that's probably what Judge Kaplan was relying upon based on the fact that he sua sponte ordered nominal damages after the jury returned its verdict. So if I could just address, then, what would I say is the second argument, which is that nominal damages can be a substitute for actual damages for sustaining a breach of fiduciary duty claim. Well, the problem is that there are two decisions of the New York Court of Appeals, first the Kronos v. AVX Corp. case, and then more recently, the Conaton v. Cipotle case, which held that where damage is an element of the underlying tort, then nominal damages are not available. Specifically distinguishing other kinds of torts, like trespass, where damages is not an element of the tort, and thereby nominal damages can be recovered from torts like tortious interference, fraudulent inducement, and we would argue breach of fiduciary duty, where, as articulated by the New York Court of Appeals, by other panels of this Court, and even by the pattern jury instructions, damages is, in fact, an explicit element of the claim. And we would say that given those decisions, nominal damages were not available here. And to the extent that that is what the district court hung its hat on with respect to sustaining this finding of breach of fiduciary duty and its decision not to charge the jury that damages were something the jury had defined, that that is error and that is something that should be reversed. Robertson, So on nominal damages, there are two general purposes that support the imposition of nominal damages. One is there's liability, but there are no damages. That's nominal damages. The other is there's liability, but either damages cannot be calculated or, in this case, they've been fully they've been fully paid. Why aren't nominal damages available in that second sense, even if they're not available in the first? I would say that even if damages were available under that second sense, the jury would still need to be charged. They would have to find the fact of damages. So even if damages were not awarded, even if the jury was not finding that the Yukos Group suffered a certain dollar value in damages in awarding that under the verdict, that in order to sustain that particular finding, that that damages were, in fact, inflicted but could not be awarded for some additional reason, they would still have to find damages. And they weren't instructed here that damages were an element or that they had to make a fact finding that damages were, in fact, suffered. And I'll note that there are two breaches of fiduciary duty at issue in this case. In one of them, even the appellees don't contend that they were damaged. They actually made money on the transaction. And then on the second one, damages were rigorously and vigorously disputed at the end of the trial. There was dueling expert testimony. There was testimony from Julius Baer that the amount of money that the Yukos Group paid was in no way influenced by the fact that a finder's fee was paid to a Mr. Dimitri Maranson. So I think that you can't simply assume that the jury would have found damages in this case, given that the record was so heavily factually disputed and given that the jury was never instructed that that was a fact that they would have to find in order to sustain the verdict. So that's our breach of fiduciary duty claim appeal. The second issue on appeal for us is the Stored Communications Act. This was a claim by Mr. --"counterclaim by Mr. Feldman that was dismissed on summary judgment." And there are essentially three issues with respect to that. The first is whether Mr. Feldman gave permission to Crowe Horwath as an agent for David Godfrey to access his e-mails. And the district court held that by having given Crowe Horwath the user name, the password, and the go-ahead to search his account, that that constituted permission and that vitiated any claim under the Stored Communications Act. We argue, relying upon decisions such as Theo Fell out of the Ninth Circuit Court of Appeals, that permission is not read literally, that permission is only valid if it would not defeat a claim for trespass. It is not sufficient that Mr. Feldman gave this user name and password to Crowe Horwath. In fact, in most Stored Communications Act cases, as you will find if you look through the cases cited in both papers, the person whose e-mail was searched probably did give his password to someone at some point. That's generally how these cases come up. It is typically in the misuse of those credentials that these cases are actually litigated. Kennedy. Can you point us to any case in particular in this context where there's misuse of files that were previously downloaded as opposed to unauthorized access? Because that seems to be the common element from the cases that I saw. I cannot point to a specific authority where there is exactly this particular factual scenario. What I will note about it is it's not simple misuse of the files. That's certainly how it's characterized by the appellees. What you have here is Mr. Feldman only gave consent, in fact, conditioned the consent that he gave to the Yukos group to search his e-mail on representations by Crowe Horwath that the information after, I believe it was a date in September of 2012, would not be searched and not be reviewed. Why isn't that essentially a contract claim instead of a Stored Communications Act claim? Well, it might also be — it could also potentially be a contract claim. But I don't think that the fact that it could also give rise to a contract claim would defeat the fact that it could be a Stored Communications Act claim. There are many Stored Communications Act cases where an employee, for example, violates the terms of use that his employer imposes upon access to corporate e-mail and corporate records. Those could all be contract claims as well. They could be breach of employment agreement claims. But they're also Stored Communications Act claims. So I don't think that necessarily precludes a Stored Communications Act claim. Not necessarily, but here your client authorized the access on a given set of understandings, and they didn't go beyond the access that was authorized. They download the material, and then you say read material or made use of material that they had agreed not to make use of. But with regard to accessing the facility and obtaining the communications, it seems like your client concededly authorized that. I think your Honor hits the nail on the head when you describe it as a series of understandings. They gave access pursuant to a series of understandings and outright representations from the agent that actually conducted the search. And that's why I would look back to the Theofil case where they liken this to trespass. A person allows someone onto his or her property based on a set of understandings and a set of representations. That in Theofil, the example they gave is someone claims to be reading a meter. They're a gas person that's come to just read the meter, and instead they come to spy on them by looking through the window or doing something else. That would not defeat a claim of trespass because the permission was given pursuant to a set of representations and understandings that turned out to be false. And we think that it should apply to that. That should apply. Same reasoning should apply here. Thank you very much. Brooks. I'm from Morrison-Cohen here with my partner, Mary Flynn. We represent the various Yukos group entities who are respondent across at police here and third party defendant David Godfrey, who is a respondent. Now, Mr. Feldman argues that plaintiffs have failed to establish the requisite elements of the breach of fiduciary duty. They say that damage is a required element for a claim of breach of fiduciary duty and that plaintiffs failed to offer any evidence that either of the two schemes were the jury-found liability, that there are any actual damages. But Mr. Feldman is wrong for at least two reasons. First, New York law permits the award of nominal damages in connection with breaches of the duty of loyalty in connection with situations just like this. The second one is that it's simply not true that we didn't offer actual evidence of damage as a trial. We did prove damages, and damages were established as a matter of law if there was a breach. I'll get to that in a second. So under New York law, the nominal damages are permitted in a claim for breach of fiduciary duty such as this. The Action House decision of this Court from 1995 reversed a trial court judgment and ordered a new trial because of the trial court's failure to instruct the jury on the availability of nominal damages for a breach of fiduciary duty under New York law where no compensatory damages could be shown. Numerous other cases have also done the same thing. There's a First Department case called the Brian E. Weiss v. Miller case from 1990. We contend that Action House is a binding precedent of this Court, that this Court should follow. The panel was divided in Action House, and the majority seemed to recognize that Cromos could be interpreted to preclude an award of nominal damages. And your adversary points to panels of this Court in the aftermath of Action House that seem to say something different. So help me understand that precedent. Okay. Well, I don't think that there are any panels of this Court that have said anything different, Your Honor. But first, let's take Action House. So was the Court divided in Action House? The Court wasn't divided. The Court was divided as to what the appropriate disposition of the appeal should be, but in the law they weren't divided. They compromised and decided to send it back to the judge with instructions on nominal damages, which two of the judges agreed to. So, you know, I think that And Judge Newman also thought that they could have skipped that step and just affirmed the punitive damage award there, but he didn't think that there wasn't the instruction that he was agreeing to give was incorrect. So I think that even though there was a, you know, there was negotiations in how they reached that decision, in the end, Judge Newman and Judge Winter joined the opinion, and that's a binding precedent of the Court, I believe. Now, Feldman or … Is it a theoretical matter? Can you help me understand? As I understand your adversary's argument, it's that nominal damages don't make sense here because damages is an element of a fiduciary duty claim. And so you can't just find $1 without actually finding that there was harm first. Well, this gets into the question of Kronos and Conatin, the State Court cases. And Feldman claims that the law has changed since the Action House case because there's this new Conatin decision, and that maybe Kronos suggested something else. So Kronos held that there was — you couldn't — you couldn't get nominal damages in a tortious interference case because damages were an element of that claim. And Conatin then looked at that and said, in a fraudulent inducement claim, you can't have nominal damages either. But the key thing here is — so what they said in Conatin is they said nominal damages are only available in tort actions to protect an important technical right, and that nominal damages are not available when actual harm is an element of the tort. However, and this is the crucial bit, Conatin also said that nominal damages may be available in an intentional tort case where the plaintiff need not allege harm to maintain an action against the defendant. And this is just that kind of case. Here, the plaintiff has alleged an intentional tort against Mr. Feldman for breach of his duty of loyalty, and because of the Faithless Servant Doctrine, plaintiffs did not need to allege any actual harm to maintain their fiduciary duty claim. And, of course, we're seeking to protect an important technical right. There are two technical rights here, I would say. One is the right of a corporate principal to loyal and honest services from its officers and directors. New York law itself recognizes that the breach of fiduciary duty actions serve a purpose beyond the mere warning of damages. The New York Court of Appeals has said that the purpose of a claim for breach of fiduciary duty involving self-dealing, unlike an ordinary tort or contract case, is not merely to compensate the plaintiff for wrongs committed by the defendant, but to prevent them by removing from agents and trustees all inducement to attempt dealing for their own benefit in matters which they have undertaken for others or to which their agency or trust relates. So it's your theory that we should read Connington to say that because of the Faithless Serpent case, you can't maintain a breach of fiduciary duty case in the absence of actual damages. But we do dispute that, and the law is clear. If you have a Faithless Serpent case, you definitely can maintain an action with no compensatory damages. And that's what we have here. And I just want to make another point on the technical right issue. You know, Judge Kaplan directly addressed this issue. And, you know, he was asked whether there was a technical right here. He said, yeah, of course, a director's obligation of loyalty to the principal is not an important right. I don't think it's necessary. But if it is necessary, I rule as a matter of law that the duty of loyalty and candor of a director or a corporate officer to the corporation is an important right, technical, substantive, emotional, any way you want it. Now, the other technical right here, which is — to the New York court of appeals, I mean, it's — it seems like there's some tension in the authorities here, and it's on the issue of State law. I mean, it's certainly — the Court's prerogative to do that. I don't think we object to that. I don't think it's necessary because I think, one, we have the Action House decision where this Court already has taken a position, and I don't think that one can read the Connaughton decision as undermining what this Court said in Action House. If anything, it — it reinforces what this Court was in — what this Court was — in Action House was reading the Cronos decision to say, which is that in certain cases like this, you can have nominal damages where there's these rights in issue — technical rights at issue and where actual damages aren't an element of the claim. The other technical right I just want to mention, because it may not be so clear from the papers, is that we — the defendants here — there is a value to the fact that there is a judgment against Mr. Feldman for breach of his duty of loyalty. As referenced in the record at page 1473, Feldman is bringing an action in the Netherlands against the U.S. entities seeking indemnification for his legal fees in this action, and whether there's a liability finding will have a large impact on what happens there. So it's not simply an entirely abstract thing. I also want to mention in terms of Connaughton — this reinforces this point — that, you know, Connaughton states the second restatement of torts, or the restatement of torts second, Section 907. And that section, again, which Connaughton itself directly cites, says nominal damages can be awarded in cases in which the plaintiff has not claimed compensatory damages, but is sued only to establish her right or obtain a ruling by a court that the defendant's conduct was tortious, which is what we did here. Now, in terms of the actual damages, I just want to take this. There was a dispute. There was a question of — you know, we had an expert who said that there was — talked about how the ways in which the Julius Baer scheme damaged the plaintiffs, and they had an expert who said, oh, no, the fees were fair. But there was also the argument that any compensation that was received by the agent here, Mr. Feldman's accomplice, Marenson, in the course of his agency is something that he's — he's required to hand back to the principal. And Mr. — that didn't happen here, right? Mr. Marenson and Mr. Feldman split these fees and kept them for themselves. So the fact that he got paid was itself damage to Yukos, regardless of whether, you know, some of the arguments about whether the Julius Baer overcharged us or not. It doesn't matter. The fact that our agent got this money and kept it is also damaged for us. And there was no dispute about that. So that's why Judge Kaplan didn't charge the jury specifically on damages about this, because there was no dispute. The only dispute was whether it was proper — you know, whether his — whether it was proper or not. There was no dispute about the fact that Mr. Feldman, without telling his supervisors, authorized these payments to his — his cohort. Robertson, would you comment on the sanctions issue, please? Yes, Your Honor. I think on the sanctions issue, as you raised in the other case, you know, we recognize that there's a very high bar in arguing an abuse of discretion where the — where the Court declined to sanction someone. But we — especially based upon inherent authority, which is basically the right of the Court to control its own activities, and if — if the judge doesn't feel like there needs to be sanctions, who are we to say that there should be? You make a — I understand it is a high — it is a high burden. I would just — I just want to say we thought it was worth raising to the — you know, as an issue in this appeal, mainly for the fact that his perjury was egregious. It caused, you know, two years' delays in the case. And he's a member of the New York Bar. He's a member of the New York Bar. There's no case, is there, reversing a judge for failing or for applying a too-lenient sanction? We were unable to find such a case. But if there — you know, if the Court was looking for an opportunity, here we have a member of the New York Bar who is committing perjury in his — in his deposition testimony. I see that my time is up. I'll be back. Thank you. We'll hear you on rebuttal. Thank you, Your Honors. May it please the Court. I want to respond a little bit to what Counsel for the Yukos Group has mentioned. He discussed the Action House case. I think it's really important to look very carefully at how Action House was decided and why it ruled the way that it did. In the Action House case, Judge Winter acknowledged — it's in a footnote, but it's a lengthy one — that Kronos could be held to preclude nominal damages. That was one potential reading of Kronos, and that's the reading that Judge Jacobs argued for in the dissent. But how exactly did Winter choose to — choose to — choose to interpret Kronos? Winter, when writing that particular footnote, said Kronos relies principally — principally on tortious interference authorities, and essentially holding that Kronos was limited to tortious interference, that it was a statement about how tortious interference claims worked, but not about torts more generally. Well, what do we know from the Connaughton decision that came later? Well, the Connaughton decision is not a tortious interference case. It's a fraudulent inducement case. And Connaughton, in describing how it reached its conclusion, firstly relied upon Kronos, showing that Kronos was, in fact, relevant to its decision-making, but secondly held that it — that nominal damages were not available where damage is an element of the tort, not an element of tortious — not an element of fraudulent inducement, not an element of tortious interference, an element of the underlying tort. And I think that there is no reasonable way to read Connaughton as limited to just those two specific torts. I think that the language itself is obviously more extensive than that. Now, counsel mentions that Connaughton says, well, it's available where you need not allege harm to prove your claim. Respectfully, that is the same thing as saying that damage is not an element of the tort. In a situation where you need not allege harm is a situation in which damage is not an element of the underlying tort, I think those mean exactly the same  Kagan. I thought his argument was that the damages were not an issue because it was obvious that there was an improper payment that your client had received. Well, what I will say is damages were not established as a matter of law. There was no ruling of the district court that damages had been established. They didn't make a motion to hold that damages were established as a matter of law. And damages were, in fact, heavily disputed at the — at the level of the court. And as I mentioned in my previous argument, you know, one of these claims of breach of fiduciary duty, they're not even alleging that there was damages. So I don't think they can hold, and I don't think this Court can hold, based on no prior motion or no prior ruling by any court, that damages were established as a matter of law. They mentioned the Faithless Servant Doctrine, but as I said before, they lost on that. So to the extent that the Faithless Servant Doctrine could substitute for damages, maybe in some case, but certainly not in this one. I want to very briefly discuss the issues raised on their appeal. So firstly, on their claim that the Faithless Servant Doctrine should apply, one, they waived this in their jury instructions. They waived this argument. They waived any objection to the jury instructions on the Faithless Servant Doctrine. They claim in their papers that they didn't waive it, that they did object. I would urge you to read the portion of the papers that they cite, the portion of the appeal. It's at A2665. They were not objecting to substantial disloyalty. They never objected to substantial disloyalty. They objected to the time period of disloyalty being found by the jury, but they never objected to the substantial disloyalty standard. And this is a standard that is followed by all four appellate divisions in New York. We cited the three of them in our papers. The fourth the fourth department also follows it. I would note since the ---- And your argument is that to the extent they didn't object and that there's a split of authority, this can't constitute plain error. That is correct. And we rely upon the Fabry v. United Tax International case and the Anderson Group v. City of Saratoga Springs case for that. There's no ---- there's no ---- whether you characterize it as fundamental error or plain error, you don't have that where there is an unclear area of law. And here you've got two very, very robust strains of authority from New York. The fact that the Court chose to rely upon the one that virtually every court in New York considers to be plain error, they then also argue with respect to ---- they also argue with respect to sanctions. I think the Court put ---- really put the nail on the head here. They have to prove not only that Feldman did something wrong, which he didn't, not just that sanctions were sustainable or potentially appropriate if the district court had chose to impose them, but that sanctions were mandatory, that it was an abuse of discretion not to impose sanctions and not to impose the highly specific and idiosyncratic sanctions that they sought in their papers. Essentially, to call Feldman a liar in front of the jury, not merely to allow the jury to look at his prior testimony, but to outright characterize him as a liar, to exclude all evidence that a transaction was a loan when there's documentary record that it was, in fact, a loan, allow them essentially to mislead the jury as to the nature of the transaction, and to forbid Feldman from explaining why he sought help to pay for his legal fees from Promneftstroi. Basically, don't offer a defense. There's no authority anywhere suggesting that you can do that, and frankly, that should be rejected. Thank you very much. Roberts. Let's make a couple of additional points. Regarding the action house, you know, there's a footnote where the Court says, oh, you know, that some people could read this as Cronos is precluding nominal damages in tort cases. They then obviously conclude that that's, you know, they're not taking the Court is not taking that reading, so the fact that they admit there could be a contrary reading doesn't undermine what they actually hold, and more importantly, we then get Connaughton 15 years later, which makes it clear that there definitely can be cases where there are nominal damages allowed, where tortious unit, where the damages are not an element of the tort. And now, on these damages being an element of the tort, this is an interesting point. You know, they argue in their papers, like, you can tell that damages are always an element of the breach of fiduciary duty because New York pattern jury instructions say breach of fiduciary duty, one of the elements, damages. But if you look at the New York pattern jury instructions, right, they're not geared towards all of the nuances of New York law. I mean, specifically, if you look at the contract elements, it says the elements of the cause of action for breach of contract are things including formation, blah, blah, blah, and resulting damages. But if you look at the case law, there's many cases, including ones that they, that Mr. Feldman has cited, and they get perfectly clear that nominal damages are always available in a breach of contract case. Now, in terms of whether damages were disputed or proved at trial, I think, I think from Justice Kaplan's view, that whether there were damages or not was subsumed in his question to the jury as to whether they had Mr. Feldman had breached his fiduciary duty in regards to the Julius Baer scheme. That was the whole question. We didn't have to ask for a separate determination because that was the question that we wanted answered. And, you know, there could be no dispute that the fact that the Mr. Marenson took this money that wasn't his and kept it was damaged to us. I mean, they didn't, they didn't allege that Mr. Feldman, Marenson and Mr. Feldman had given the money back or that the payments didn't happen in the way that we said. They agreed that the payments happened. They just said that, you know, he could do that. I just want to finally say, you know, in regards to the Stored Communications Act claim, right, the they argue this Ninth Circuit case, the AFL, and they say, they reference that it's a, that court there used this trespass analogy. But there's no trespass case where you, you know, agree that you will, you know, that you'll trespass for certain reasons and then you're on the property and then you leave and then you do something different two weeks later that somehow negates your, you know, makes your appearance there a trespass. So I just don't think that what happened here, where Crow-Horworth had authorization to take the, to take the e-mails, the fact that they might have done something later with them just can't negate the permission, the authorization that Mr. Feldman gave. And now, I also just want to look, you know, beyond that, I don't want to lose sight of the fact that, you know, that was not a motion to dismiss, right? That was a motion for summary judgment, and there was no evidence backing up even the story that Mr. Feldman has told, right? There's no evidence that, that there was any deceit at all. You know, he says that, that he was told that the e-mail collection was necessary to preserve Yukos Hydrocarbon's business records, and that this was false. But there's nothing in the record that says it's false. That's not in anybody's affidavit that says that's false. There's nothing in there, there's nothing in there that they, you know, he says they pilfered the e-mails and used them against him. There's no e-mail. There's no evidence that that happened. So, you know, the fact that they accessed it for a secret, unauthorized purpose, nothing says that. And in terms of Mr. Godfrey, you know, it's just, it's a peculiarity of the case that they only had discretion to, they only had leave to amend their complaint as to the third-party defendants, so they came up with this claim. They just brought it against Mr. Godfrey for who knows what reason, but there's no evidence that he did this or he was, you know, this was, this was their outside counsel's, Gibson Dunn was their outside counsel, and Gibson Dunn hired Kroll-Horwath. So there's, you know, there's direct evidence that Mr. Godfrey didn't know exactly how they were going to collect the e-mails, that he wasn't informed that Mr. Feldman had made this restriction at the time, and that he didn't tell them, oh, lie to them or tell Mr. Feldman something and then just do it. There's just no evidence of that at all. So, really, that claim simply can't survive. And Judge Kaplan was totally right to give a summary judgment on that. On the Faithless Servant standard in general, I would just say briefly or am I in overtime? Sorry. Then we will rest on our papers. Thank you. Thank you both. Well argued.